IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MANUEL PATRICK CAMARILLO                                                                PLAINTIFF

     v.                Civil No. 15-5282

SERGEANT KILPATRICK and
DEPUTY ADRIAN RIVERO                                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Manuel Patrick Camarillo, proceeds *in forma pauperis* and *pro se.*

Defendants filed a motion for partial summary judgment (Doc. 15). A hearing was held on October 13, 2016, to allow Plaintiff to testify in response to the motion. He appeared by video from the Yazoo City Low Federal Correctional Institution in Yazoo City, Mississippi. The events that are the subject of this case occurred while Plaintiff was incarcerated in the Benton County Detention Center (BCDC) in Bentonville, Arkansas.

### I.  BACKGROUND

Plaintiff was booked into the BCDC on May 2, 2015. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A-1 at 7.[1] He remained there until December 21, 2015, when he was released to the custody of the United States Marshal Service. *Id.* at 31. Plaintiff was involved in a number of incidents involving staff or other inmates which lead to incident reports being prepared or disciplinary charges being filed against him. *Defts' Ex.* A-2.

---

[1] Page numbers are to the jail file number located in the bottom center of the page.

Plaintiff claims to have been subjected to two separate uses of excessive force while he was incarcerated at the BCDC. The first incident occurred on June 11, 2015, and involved Sergeant Kilpatrick. Plaintiff states he was hit by an inmate with a tray. Kilpatrick came and handcuffed Plaintiff and took him to a different cell. Plaintiff was ordered to get to his knees, but stated he could not comply because his "knee was messed up." After three orders, Kilpatrick allegedly slammed Plaintiff's face into the wall and struck the back of his knees. Plaintiff was taken to the hospital and received stitches for a head injury and had to have crutches. There is no video of this incident, and the Defendants concede there is a issue of fact given the parties' differing versions of the facts.

The second incident occurred on November 1, 2015, and involved Deputy Rivero. At the time of this incident, Plaintiff was in convicted status.

Plaintiff testified that Rivero entered the pod saying that "today was not the day and someone was going to get it." In response, Plaintiff testified that inmates from everywhere began saying "f___ the police."

According to Plaintiff, Rivero came to the top tier of the pod, where Plaintiff was housed, and said he knew that it was the Plaintiff who made the disrespectful comments. Rivero took Plaintiff out of his cell. Once downstairs, Plaintiff states he was slammed against the wall and then taken to the ground, taken to pod control and slammed into the wall again, and then slammed into the wall and taken to the ground again in E-pod. There is a video footage of these events, and Rivero has moved for summary judgment on this excessive force claim. Defendants have also moved for summary judgment on the official capacity claim.

Plaintiff testified that there was no reason for him to be handled in that manner. He states he was not given a disciplinary charge because there were no grounds for it. When Rivero and another officer came to the Plaintiff's cell on the top tier, Plaintiff indicates the inmates were on lockdown and he and his cellmates were playing dominos.

After they came down the stairs, Plaintiff testified he was forcefully pushed against the wall. His hands were behind his back and he could not push free. At pod control, Plaintiff testified he was again slammed into the wall. Plaintiff stated he was then taken to the ground "very forcefully." Finally, when he was being taken to E-pod he maintains that he was slammed against the wall and again taken to the floor.

Plaintiff admitted he was cussing Rivero out and tried to provoke him. Other than some pain and discomfort while the events occurred, Plaintiff suffered no injury as a result of the events on November 1.

Plaintiff submitted a grievance on November 2, 2015. *Defts' Ex.* A-4 at 167. It provides:

> on novmber the 1st deputy rivero came into d 130 and started saying todays not the day threating everyone and then came up to the top tier to my cell with deputy kemp and removed me from my cell and started to talk down to me for no reason as i got to the bottom of the tier he slamed my face into the wall escorted me out into pod control slamed me again to the floor saying im not tough and what not then him other deputys took me to e pod slamed me in pod control and then put me in my cell i feel my rights have been violated

*Id.* (mistakes in original).

On November 3, 2015, Plaintiff noted the use of force occurred around dinner time on November 1. *Id.* On November 4, 2015, Plaintiff asked to speak to a captain about the November 1 incident as well as the June 11 incident. *Id.* at 168. On November 4, 2015, Plaintiff stated he believed Rivero used excessive force, and that he needed copies of his grievances to

attach to his § 1983 forms. *Id.* at 172. Plaintiff submitted several other grievances asking why no one had responded to his grievance against Rivero. *Id.* at 173-174. He was told the matter was being investigated. *Id.* at 174. On November 29, 2015, he was told that Lieutenant Darner would come and speak to him. *Id.*

In response to the grievance filed by the Plaintiff, Rivero was ordered on November 24, 2015, to write an incident report about what occurred on November 1, 2015. *Defts' Ex.* A-3 at 77. The report states:

> On the date in question at approximately 1900 hours, I entered D-130 to pick up dinner trays with Deputy Kemp. While in the pod, Deputy Kemp and I were giving instructions to the inmates when we heard someone yell "f--- the police." It was determined that the screaming was coming from the top tier, cell 207. When I opened the cell door, Inmate Camarillo looked at me and grinned. I instructed Camarillo to exit his cell and come out to pod control. As we were going down the stairs, Camarillo asked why we were pulling him out. I told him I was taking him out of the pod due to his disrespectful comments which were disrupting our operations Camarillo began walking faster down the stairs to where I had to speed up my pace in order to catch up to him and he yelled at Deputy Kemp and I in an aggressive tone "f--- you" and began to tense up and get angry. Deputy Kemp and I then placed Camarillo against the wall inside the pod in an attempt to gain control of his arms as he tried to pull away. Once we gained control, we walked Camarillo out to pod control and instructed Camarillo to go to his knees for our safety because he was progressively getting angrier and non compliant. Camarillo once again began resisting by not complying and disobeying the order of a deputy and he refused to go to his knees. Deputy Kemp and I proceeded to place Camarillo on the floor to once again gain control of the situation. Once the situation was under control, Deputy Kemp and I help Camarillo to his feet and we decided to escort Camarillo to Echo pod and to temporarily house him in a cell in E-103, until he calmed down due to past instances where Camarillo's temper compromised the safety and security of the facility. While we were walking down the echo pod hallway, Camarillo again began to resist and pull away and yell "break my shit!" Camarillo then tripped over his sandal and as he pulled away Deputy Kemp and I placed him on the floor in order to avoid him getting injured. Once Camarillo was brought to his feet and housed, I returned to my duties without further incident.

*Defts' Ex.* A-2 at 77.

Deputy Kemp supplemented this report. *Id.* The only significant difference is that Deputy Kemp does not indicate that Camarillo tripped while being escorted to E pod. Instead, he indicates they took Camarillo to the ground to control the situation because Camarillo "became very angry and started screaming 'break my shit' and began to tense up." *Id.*

With respect to the existence of a policy or custom that was the moving force behind the alleged constitutional violations, Plaintiff testified he believed Rivero acted contrary to policy. This was just something Rivero did on one occasion.

The first videos (Pod D130-B, Pod D 130-C, Pod D 130-A) show different angles of the Plaintiff being escorted out of his cell, down the stairs, and out of the pod. Initially, the three officers are talking to the Plaintiff at his cell. Plaintiff then leaves his cell and goes down the stairs. Plaintiff is walking with his hands behind his back followed by three officers. The first officer, Rivero, is approximately two steps behind the Plaintiff followed by the other two officers. When they reach the bottom of the stairs, the officers turn the Plaintiff against the wall. Plaintiff was not struggling initially, but when placed against the wall he does move around some. Plaintiff is held there for a matter of seconds. Rivero is at the Plaintiff's back. Rivero has his upper arm against the Plaintiff's back holding him against the wall. The two other officers stand at the Plaintiff's sides. Two other officers join the three officers holding Plaintiff against the wall. The officers appear to be engaged in conversation with the Plaintiff, however, there is no audio. Plaintiff is then taken off the wall and escorted out of the pod. The entire incident took approximately one minute according to the date stamp on the videos.

The second video (Pod D control B & Pod D control A) show different angles of what occurs when Plaintiff and the officers exit the pod and enter pod control. Plaintiff was taken

directly to the wall of the control center and then taken to the ground. There are four officers present. One officer is kneeling on one of Plaintiff's legs and holding the other with his hands. A second officer is at the Plaintiff's back. He appears to have one knee on the Plaintiff's back; his other knee is against the pod control wall. A third officer is kneeling by Plaintiff's shoulders. The fourth officer is kneeling by Plaintiff's head and holding Plaintiff's head down with his hand. Plaintiff is held on the ground for approximately one minute. During this time, the officers appear to be speaking to the Plaintiff. Plaintiff is then stood up and escorted to the hallway leading to E pod.

The final portion of the video (Pod D Hallway) is from the hallway leaving the control pod. Plaintiff is walking down the hallway with Rivero and another officer, with one officer on each side of Plaintiff. The officers are holding Plaintiff's arms behind his back. Two other officers are following behind in the hallway. They leave camera view. According to Plaintiff, he was forcefully pushed against the wall and then taken to the ground where he was held for several minutes.

## II. APPLICABLE STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

AO72A
(Rev. 8/82)

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the non-moving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants move for summary judgment on the following grounds: (1) they argue the force used by Rivero was reasonable in light of the circumstances; (2) Rivero is entitled to qualified immunity; and, (3) there is no basis for official capacity liability.

**A. Excessive Force**

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Hudson v. McMilliam, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993). "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of

AO72A
(Rev. 8/82)

the individual case or the particular prison setting." Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006) (internal quotations omitted).

The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986).

In Wilkins v. Gaddy, 559 U.S. 34 (2010), the Supreme Court clarified that the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim. See also Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010).

With respect to the use of force in the D pod, I believe there are no genuine issues of fact as to whether the force used was justified. The use of force was minimal, and there is nothing to suggest Rivero used the force maliciously or sadistically to cause harm to the Plaintiff. Plaintiff admits that he was cussing Rivero out and trying to provoke him. The video shows Plaintiff walking out of his cell and going down the stairs on his own. He appears to be walking slightly faster than the deputies as they go down the stairs. The deputies catch up and place Plaintiff against the wall at the bottom of the stairs. There is no aggressiveness on the part of Rivero. Plaintiff was turned so that his face was against the wall. Plaintiff is offering little resistance and after a short period of time is seen walking out of the pod.

With respect to the use of force in pod control, I believe there is a genuine issue of material fact as to whether the use of force was excessive. The video shows Plaintiff being placed against the wall, then taken to the ground by five officers, including, of course, Rivero,

and picked up and walked out of pod control. The video contains no audio, so the Court has no way of knowing what was said. There appears to be no reason for the Plaintiff to have been placed against the wall and taken to the floor. Plaintiff was being escorted out of the pod and did not appear to be struggling or resisting, was not physically threatening the officers, and did not appear to be a danger to himself or others at the point where the force is applied. Viewing the facts in the light most favorable to Plaintiff, as we must, there is a genuine issue of fact as to whether the use of force was a good faith application of force to maintain or restore discipline. From the record before us, the use of force does not appear to have been defensive in nature or necessary to maintain order or security. "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of the individual case or the particular prison setting." Johnson, 453 F.3d at 1113 (8th Cir. 2006) (internal quotation marks and citation omitted). Indeed, there is a question of fact as to whether the use of force was an excessive reaction by a frustrated officer.

  The final use of force occurred in the E pod hallway. The video shows the Plaintiff being escorted down the hallway, but it does not show him being taken to the wall and then the floor. Plaintiff testified that he was pushed forcefully against the wall and slammed to the floor "very forcefully." He testified he did nothing to physically resist the officers, one of whom was Rivero. He testified he was complying with their orders. He does admit to attempting to verbally provoke Rivero. I believe there is a genuine issue of material fact as to whether this use of force crossed the line between force necessary to maintain discipline and order and that used maliciously or sadistically to cause harm.

### B. Qualified Immunity

Rivero also contends he is entitled to summary judgment in his favor on the basis of qualified immunity. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)). The inquiry is normally one of pure law. J.H.H. v. O'Hara, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process." Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001). First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, the court must determine whether that right is so clearly established that a reasonable official would have known that his actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions." Nelson v. Con. Med. Services, 583 F.3d 522, 528 (8th Cir. 2009).

For the reasons discussed above, taken in the light most favorable to the Plaintiff, I believe the facts alleged will support a finding that Rivero violated the Plaintiff's Eighth Amendment rights. Furthermore, I believe the Eighth Amendment right to be free from the wanton use of force inflicted maliciously or sadistically was clearly established at the time of the offending conduct. See Whitley v. Albers, 475 U.S. at 320 (whether the measures taken that inflict unnecessary and wanton pain constitute excessive force turns on the question of whether

the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm). In Treats v. Morgan, 308 F.3d 868, 875 (8th Cir. 2002), the Court said:

> It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause. It is also clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security. . . . . [T]he law was clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult. (Internal quotation marks and citations omitted.)

I believe a reasonable trier of fact could find that the force was applied maliciously or sadistically. As a reasonable trier of fact could answer "yes" to both questions of the qualified immunity inquiry, Rivero is not entitled to qualified immunity.

### C. Official Capacity Claim

Defendants are entitled to dismissal of the official capacity claims. Plaintiff does not allege that an unconstitutional municipal custom or policy caused the constitutional violation at issue in this case. Instead, he only points to two incidents that occurred nearly five months apart and involving different officers. In fact, he testified that the Defendants acted contrary to the BCDC policies.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" Mann v. Yarnell, 497 F.3d 822, 827-28 (8th Cir. 2007) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)). No such claim is made in this case.

Further, even if Rivero violated county policy, this is insufficient to support county liability. "A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice." Johnson, 453 F.3d at 1114 (citation omitted).

### IV. CONCLUSION

For the reasons stated, I recommend that Defendants' partial motion for summary judgment (Doc. 15) be **GRANTED IN PART AND DENIED IN PART.** The claims against Deputy Rivero stemming from his actions in D pod should be dismissed. Further, all official capacity claims should be dismissed. This leaves for later resolution: (1) the individual capacity claims against Deputy Rivero stemming from his actions in B pod control and his actions occurring during his escort of Plaintiff to E pod on November 1, 2015; and, (2) the individual capacity claims against Sergeant Kilpatrick stemming from the June 11, 2015 incident.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of February, 2017.

/s/ Mark E. Ford
 HON. MARK E. FORD
 UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)